May it please the Court, I am Margaret Little of the New Civil Liberties Alliance, representing Appellant Michelle Cochran. Michelle Cochran asks this Court today to find jurisdiction and remand to the District Court. Article III courts have the power and the duty to enjoin the SEC from subjecting Americans to serial, unconstitutional administrative proceedings destined to be set aside. Michelle Cochran endured one such proceeding, pro se, in 2016, and now the SEC has set a second administrative proceeding into motion before a judge that the government itself has argued enjoys unconstitutional multiple layers of tenure protection. All Americans have the right to demand a lawful court. They should not be subjected to serial, to-be-vacated hearings that impose enormous professional, reputational, and financial costs on respondents that create costly and prejudicial years-long delays that impair the ability of respondents to defend. Further, they constitute a profligate waste of public resources. Let me say to-be-vacated because our en banc court just said that if there is indeed a problem with the removal power, that the remedy is, is not to vacate everything that happened before, it's just to, to say going forward under the statute, the President has full removal authority. Well, I, certainly in the context of the FHFA, that is true. Right. One of the problems in this case is you have a different statute, different statutory scheme, and you have multiple layers of tech, uh, tenure protection. In addition, um, the, um, the situation is factually different in terms of where the plaintiffs stand and what the remedy might be. So I agree with your interpretation of the Collins case, but this is a, in a different posture and it is entirely possible that a court could determine that the same remedy that was afforded in the Lucia case ought to be applied here as well. Free Enterprise Fund provides the rule of decision on both jurisdiction and the merits. The Supreme Court interpreted this exact same statutory scheming and concluded that, quote, merits confer on district courts. The inquiry for this court should end right there. This is why this court should not accept SEC's invitation to fall into error as five circuits have done. Free Enterprise Fund had already cycled through the Thunder Basin factors and reached a different destination as to every single point. The way the analysis works is it's a two-part test and then to assist the court in determining part two, there's another three tests, so something like five tests. The problem with the SEC ALJ cases is that they neglect or gloss over completely the very first and determinative question, which is, is it fairly discernible from the text of the statutory scheme that this type of claim to an administrative proceeding? The Free Enterprise Fund court says of the same statute that is at stake here, the text does not expressly limit the jurisdiction that other statutes confer on district courts, nor does it do so implicitly. The second part of the inquiry is, is the claim of the type that Congress intended to be adjudicated? If I can convey one thing today, I think it is hard to make a case at all that Congress ever intended anyone in an administrative agency or an administrative law judge to be deciding structural constitutional questions such as that presented here, having to do with the complex removal protections that are afforded to SEC ALJ judges. But to the point in Free Enterprise Fund, when they reach the part of the analysis about whether the claims are of the type Congress intended to be adjudicated, here's what they say, and this again is a direct quote. Petitioner's claims are outside the Commission's competence and expertise. Competence, that's an important word. Then to assist a court in determining whether they are of the type, there are three factors familiar to you, I'm sure, from the extensive briefing in this matter. Two of those factors, whether the claim is wholly collateral or also outside the expertise of the SEC or its ALJ, Free Enterprise Fund conclusively determines that they are outside those, uh, those expertise and are wholly collateral. In addition, and tellingly, many of the five SEC ALJ cases also conclude the same. So we're left with one . . . The review of Free Enterprise did not involve an enforcement proceeding. There was as yet no enforcement proceeding, and so the Supreme Court says there's no way to challenge this, they're just under investigation by this Board. Um, I mean, that's the, the Bank of Louisiana decision from earlier this year, the FDIC case out of our court distinguishes Free Enterprise in that way. So how do you . . . I don't think that's a . . . How do you respond to Bank of Louisiana? Excuse me. Yeah, go ahead. I don't think that's a distinguishing factor that had any bearing on the jurisdictional question at stake here and also the issue of whether there was preclusion . . . Doesn't it go to the core issue of whether the first question under the three-part test is, is there an alternative way to raise this? And if there's an enforcement proceeding, you can raise it, whether effectively or not, in an enforcement proceeding, whereas when you're just under investigation, there's, there's no vehicle whatsoever to raise a challenge to that, absent going to federal district court. Which makes Michelle Cochran's case all the more compelling, because what you have in, in the Free Enterprise Fund is somebody who wasn't harmed by the public company accounting and oversight board at all. They were not subject to any kind of sanctions, any kind of action by the board. Nonetheless, the Supreme Court, which binds this court, said you can come in and challenge the removal protections. Here, we have somebody harmed by the, um, and, and dragged into the proceeding before a non-constitutional administrative law judge. So Michelle Cochran's case is far more compelling than that presented in Free Enterprise Fund. But why wouldn't every, every point you're making be true of the Bank of Louisiana decision Judge Duncan wrote earlier this year, which raised separation of powers, um, challenges, among other things? Sure. I'm sorry. The Bank of Louisiana case decided a statutory question under a different statute, 78, uh, not 78Y, but Section 1818 of the FDIC statute. Now, Thunder Basin is a doctrine and a tool of statutory interpretation. The, the United States Supreme Court has already interpreted 78Y. In addition, in the Bank of Louisiana case, they were interpreting a statute that had a provision that said that the, um, review only after the administrative proceedings to this circuit court was exclusive and the, provided for no injunctive relief at all. And that's why the panel came out the way they did. What was the separation of powers issue in Bank of Louisiana? Was it the same as the one here? Well, that's really hard to tell from the, uh, record. And in an earlier panel hearing on motions, uh, that issue came up because it's, it's barely mentioned in Bank of Louisiana. I did, I did not see it in the Bank of Louisiana. Yeah. It's barely mentioned in the Bank of Louisiana, uh, case. Judge Jones, uh, expressed some concern about, you know, whether it was even in the case at all. And I'm sure my esteemed, uh, counsel for the Securities and Exchange Commission will address that point. But, um, I, I, one thing the court does say is the only claims that they were seriously, uh, pressing by the time of the Court of Appeals decision did not appear to include a separation of powers question. And so the Bank of Louisiana case is inapposite and irrelevant to the decision this court has to make today. It does not bind this court in any way. So getting back to the analysis, uh, of the five-point analysis, there's one, one factor we have not discussed yet, and that's the meaningful judicial review. And essentially, those five S-E-C-A-L-J cases hang their decisions on that one thin thread. But the Free Enterprise Fund says, we do not see how petitioners could meaningful, meaningfully pursue their constitutional claims under the government's theory. Not every board action is encapsulated in a final commission order or rule. Now, we are not, we are not, um, challenging a commission order. We, there's no final order at stake here, and we're not challenging a constitutional removal protections that protect S-E-C-A-L, administrative law judges. Free Enterprise Fund again says, we do not consider eventual judicial review to be a meaningful avenue of re, relief on the removal question. And that, uh, that is really what this case comes down to. Five circuit courts do not examine the actual statute, 78Y. They fly in the face of controlling Supreme Court authority that holds otherwise. Further, those, um, decisions were all issued prior to the Lucia decision, and I think that makes a difference. Um, it's before, um, S-E-C-A-L-Js were found to be inferior officers. It was also, those five S-E-C-A-L-J, uh, cases were issued before the government admitted that S-E-C-A-L-Js sit in violation of Article II. And here's the direct quote from the Solicitor General's submission in the Lucia case, that the limitations that the provision imposes on removal of the commission A-L-Js would be unconstitutional if, if the interpretation that they were, um, offering to the Supreme Court could not be reconciled with the statute. That's pretty strong admission from the government, and, um, an important one for purposes of this case. Also, um, a distinction that applies to Michelle Cochran here, in, in none of the five S-E-C-A-L-J cases had the plaintiff been put through one unconstitutional proceeding that the S-E-C had every reason to know was unconstitutional, and then was poised to go through the pro, that process a second time with the possibility of vaca tour or other, uh, remedy that would make that whole proceeding a fut, futility. Also, crucially, not one of the S-E-C-A-L-J cases considered the fact that removal may only be cured either by Congress or a federal court with the power to sever. So, because those courts did not even consider this question, those, they don't provide even persuasive authority to this court in deciding this question for Michelle Cochran. Um, moving to, um, the question of, um, of why she should be entitled to injunctive relief, she will be subjected to an unconstitutional administrative proceeding and unable to recover money damages because of the S-E-C's sovereign immunity. As, as it quoted in our brief, brief, um, that is, per se, irreparable harm. I see my, oh, no, that's my warning light. Okay. Um, she also has already been barred for two years inflicting irreparable professional, reputational, irreversible harm on her. The pending enforcement action also inflicts immediate and lasting reputational consequences for her employment in the industry. Further witness memories, documents, evidence, testimony is becoming weaker and more unavailable, and circuit court eventual review cannot restore any of that. Plaintiffs requested relief would also become moot because the court of appeals cannot enjoin a hearing that has already occurred. Further, the public has a compelling interest in ensuring that its citizens are not subjected to unconstitutional treatment by their government. Finally, Lucia said in the Supreme Court decision that they wanted lower courts to address removal. The Supreme Court has not yet decided whether to bring an action against her before the commission. It chose to bring the action before an unconstitutionally appointed ALJ, and the S-E-C was aware of potential constitutional problems with its ALJs, problems so significant that the Department of Justice took the extraordinary step of confessing error before the Supreme Court. Having clung to its erroneous position that the S-E-C was improperly appointed, the S-E-C must live with the consequences of its choice to bring this action before an ALJ who is improperly protected from removal by multiple layers of tenure protection. Wright and Miller and other authorities provide post hoc adjudication of constitutional questions is inadequate with respect to constitutional injuries. Thank you. Thank you so much. May it please the Court, Daniel Aguilar for the Securities and Exchange Commission. As this Court explained in Bank of Louisiana, five different courts of appeals have held that respondents in ongoing S-E-C proceedings can raise constitutional challenges as part of those proceedings, and then, if agreed by a final order, seek judicial review in the courts of appeals. But I did not read Bank of Louisiana to touch topside or bottom the question of whether the ALJ in an S-E-C proceeding was constitutionally appointed or authorized to conduct the proceeding. So two responses to that, Your Honor, is one, that the court in Bank of Louisiana page, I think it's 930, says there's a separation of powers challenge to the ALJ here. And in the agency decision, which we cited in our brief, I believe it's at page 13. It did not resolve that challenge. No, it did not, and we're not claiming that it did. But the point here is that we're not here on the merits, right? We are here on the sole issue of jurisdiction. Can you bring a suit raising constitutional claims to enjoin an S-E-C proceeding, which is already ongoing and to which you are already a respondent in district court? And so that's where the Thunder Basin analysis comes in, right? So just pointing out that on page 13 of the FDIC opinion, it raises out the two separate claims that they raised to the ALJ of the FDIC. One is an appointments clause challenge, and the other is a multiple errors of tenure protection challenge. But so when you're talking— But you'll agree it's quite a different statute that was at issue in Bank of Louisiana. Well, it's a different statute in that it also contains— Worded quite differently. Well, so the statute has two different parts, right? One is something that says you can come to—if you don't like a decision of the FDIC, you can appeal to the courts of appeals, and they'll have jurisdiction. And then I believe it's also—that comes exclusive upon filing of the record. And then it also has a separate provision that says, and nobody else has jurisdiction. So the S-E-C statute mirrors that first one, right? It says if you don't like a decision of the S-E-C, you can come to the court of appeals. We have jurisdiction. And when you file the record, that becomes exclusive. That's materially indistinguishable from the judicial review statute that was also at issue in Thunder Basin, where the Supreme Court said, we can fairly discern that Congress— Okay, but I'm just talking about Bank of Louisiana, not Thunder Basin. Sure. So in Bank— See, the statute at issue is different. The statute at issue is different. And then what the Court says on page 925, footnote 10, is that there is this extra part to the statute about whether 1818 I, 2I, or 1819 I, you know, that exclusive bar really applies. And at the end of that footnote, the Court says, in any event, we don't need to resolve that issue because of our holding that the statutory scheme, i.e. that first part about whether or not you can implicitly discern that there's not district court jurisdiction here, our holding on that part of the statutory scheme withdraws district court jurisdiction implicitly. So you're right, it is a different statute, but that's not dispositive, right? A lot of statutory schemes are going to have different wordings and different phrasings. The key question under Thunder Basin and the Congress meant to implicitly divest district courts of jurisdiction, and then whether or not the plaintiff's claims are the kind that Congress meant to be heard in the court's appeals. So plaintiffs are relying a lot on free enterprise fund. But I think the dispositive fact that the court in Bank of Louisiana recognized there, and every other court of appeals has recognized too, is that free enterprise fund involved a freestanding challenge to the public company oversight accounting board. There were no ongoing administrative proceedings. And so what the Supreme Court said is, we are not going to have you randomly challenge a rule that this agency promulgates. We're not going to have you voluntarily incur a violation of law so that you can enter into this statutory review scheme. But in every one of these cases, and in Bank of Louisiana itself that came after free enterprise fund, what the courts recognized is, ah, you already are in an enforcement proceeding. That will be the case. And so we can read from that statutory scheme that it is fairly discernible that Congress didn't want people coming into district court to collaterally challenge their ongoing SEC proceedings. So then the question is, okay, what are the kinds of claims that you're raising? And so that's where the analysis under Thunder Basin, those three different factors kicks in. And what this court has said is, in Bank of Louisiana, is that, quote, the Supreme Court has held that Congress provides meaningful judicial review by authorizing a review of challenges to a final agency order by a federal circuit court. That's at page 925. And so here, you clearly have that, right? They can and have raised their constitutional and statute of limitations challenges in the SEC proceedings. Those are preserved. They can raise them again before the commission and have the commission consider them. If they are aggrieved by a final order of the commission, they can reiterate that on judicial review. And of course, the Court of Appeals would have authority to consider both of those things. So then there are the two other factors. Is it wholly collateral to the review scheme, and can the agency bring its expertise to bear on it? So one, is it wholly collateral? Well, no, because it's not a freestanding challenge, right? Not everybody in the world has a grievance with an ALJ's removal restrictions, right? You have, you're able to raise that claim when you're in an administrative proceeding that is before an ALJ. And at that point, Congress says, okay, here's how that review goes. The ALJ hears the case, then the commission does, and then if you're aggrieved, we apply 15 U.S.C. 78-Y, and we allow the Court of Appeals, not the district court, to have jurisdiction. And then on the agency expertise, what the Supreme Court explained in Elgin v. Department of Treasury is that that's, you're not using the common sense terms of like, can the agency bring its expertise to bear? How many of these cases involve the question of whether the ALJ or the adjudicatory body had constitution, was constitutionally appointed or empowered to decide the case? Not a, constitutional issues come in all stripes, I get that. But where the charge is, the challenge is, you do not have authority. You're not properly empowered to decide any case. How many of the cases you're citing dealt with that issue? Sure. So that would be the Second Circuit's decision in Tilton. That was an appointments clause challenge. The Fourth Circuit's decision in Bennett was an appointments clause challenge and a removal challenge. The Seventh Circuit's decision in Bebo was a removal challenge, and the Eleventh Circuit's decision in Hill was both an appointment and a removal challenge. I get that. Go ahead. Go ahead. I'm sorry, I thought that was answering the question. No, that was not the question, but I'll be more precise, but go ahead. Well, then, I'd also just, also point out, because this also just gets into the issue of, you know, they're claiming that this person doesn't have authority to hear my case. That also goes to the ripeness analysis, which we've pointed out that this court's encountered in Energy Transfer Partners and Total Gas, right? In those cases, what they were alleging is that they were being forced to be part of an administrative proceeding, being held before an ALJ, and that there's no adequate remedy through going through that proceeding, right? And this court, in both of those cases, said that's not a ripe claim for adjudication because you might prevail on the merits of the administrative action. You might not have violated any statutes or regulations, and that would moot the judicial challenge. And what the court said in Energy Transfer Partners, page 141, is the possibility that plaintiff may prevail warrants the requirement that plaintiff pursue administrative adjudication, not shortcut it. And the court reiterated that holding in Total Gas, saying that, essentially, if you're going to raise a, and there was an appointments clause challenge to the administrative law judge in the FERC, Federal Energy Regulatory Commission. And there, what the court said, well, even if you're raising an appointments clause challenge to that ALJ, ultimately, that rests on a series of contingencies. You have to believe that the ALJ is eventually going to rule against you, and that the commission's going to rule against you, and then that, you would want to seek judicial review. Those might not all happen. And so your claim rests on a series of contingencies and, accordingly, is not ripe. And so the same analysis sort of factors into that third Thunder Basin consideration. Can the agency bring its expertise to bear? Because what the Supreme Court explained in Elgin is that we'll assume that an agency can't decide a constitutional claim. That totally, the only body that's going to give you relief on that is a court. Nevertheless, the agency can bring its expertise to bear on that claim by, essentially, mooting out the issue. If the agency finds in your favor on the merits of the action, whether or not you violated a statute, or more common, routine statutory applications that it gives. And here, they're raising a statute of limitations challenge, right? If the commission's well-versed in its statute of limitations and could afford them relief if they're meritorious on that. Can that go against the basic principle that, for example, we can't, sometimes we have appeals where the merits issue is really straightforward, really very simple to dispose of, but it's a very complex jurisdictional issue. We're not allowed to go, oh, well, if we had jurisdiction we'd rule against you anyway, so it doesn't really matter if we have jurisdiction. We have to decide the jurisdiction. So you're kind of flipping the idea that, well, maybe they won't hurt you that much, they don't have jurisdiction, but they won't hurt you that much if they rule for you. Okay, but that seems inconsistent with the notion that jurisdiction is key. We don't get to rule for or against you if we don't have jurisdiction. Well, so to be clear, the question here is whether or not the district court has jurisdiction. You know, I understand that, but they are challenging the ALJ's constitutional structuring and whether they have the power to decide because they're unconstitutionally appointed. That's jurisdictional. No, I don't think it is, Your Honor. The statutes give the SEC jurisdiction to initiate enforcement actions and the statutes give the SEC the right to delegate that down to an ALJ. What they're raising is a separation. With that ALJ, you don't think it would be a question of jurisdiction if I just showed up as some person off the street and was sitting up here to decide on this case? No, not on a jurisdictional level. And the best case I'd point you to that is Freytag v. Commissioner. This was an appointments clause challenge to a special trial judge of the tax court. The petitioners in that case said they weren't properly appointed, and so therefore everything that happened in the proceeding was basically void. And what the Supreme Court said is, okay, well, you didn't raise that initially, and so it's been forfeited. But it doesn't go to jurisdiction. It goes to a separation of powers challenge and the structure of the Constitution. So we'll consider it, but the court there made very clear that a separation of powers challenge is not jurisdictional. And here, all of the jurisdiction— Here there's not an appointment clause challenge, right? Correct. They're challenging the insulation from removal. And so usually removal is tied up with or correlated with the appointment power. Except for—we've said recently the remedy is different. Yes, so the remedy is—but just to the point about whether it goes to the SEC's jurisdiction or the ALJ's jurisdiction. Yeah, it's more the ALJ. That's my question. Right. No, it's not. I'll look at that. But I also want to distinguish a little bit. Collins v. Mnuchin was not dealing with adjudicative cases. And in fact, that's a distinction, that adjudicative cases are perhaps different. Whether I have jurisdiction or not, in your world, if I just showed up here having not gone through the Senate and President and all that stuff and started ruling on your case, I think they would have to set aside that ruling. That's different from Collins v. Mnuchin, which didn't involve a ruling. It involved a policy decision and implementation of a policy that was disagreed with. So I'm not sure that that necessarily answers the question of how you address an unconstitutionally appointed ALJ, however you want to term it. Again, I don't know of a perfect analogy, but the other case that I'd point you to is Wynn v. United States. It's not cited in the briefs, I just know, and I'm trying to be helpful and answer your question. It was decided in the late 90s, and there was a territorial judge from Guam, sat on a panel at the Ninth Circuit that affirmed a criminal conviction. And there was no objection at the time. It went up to the Supreme Court, and the Supreme Court said, you're right, it's forfeited. It's not a jurisdictional issue, but we're going to address it anyway because it's one of extreme importance. It goes to the composition of the court. So again, the issue is not whether or not the ALJ has jurisdiction. The statutes that Congress has enacted provide the SEC the ability to initiate these actions and to assign them to ALJs. Now they might say, ah, there is a fundamental flaw in that that relates to the separation of powers. Look, if they want to pursue that claim, they definitely can, and they can get meaningful judicial review in the courts. The question is, does the federal district court have jurisdiction, whether the ALJ does or not? Does the federal district court have jurisdiction to adjudicate at this point in time whether those ALJs are properly constitutionally appointed? In other words, are they too insulated from removal? What I meant to ask you when you were talking about Elgin or Elgin, that did not involve that kind of issue. And you point us to the Energy case or the Energy case. That is a different case. And I have to say, I'm a little concerned about that. I mean, I think that the free enterprise kind of changed the landscape here. And I frankly can't have a very difficult time distinguishing free enterprise fund from the facts in front of us. Well, so I think that's You've got a very thin read, it seems to me, that you're hanging on here. Well, I disagree, Your Honor, and I'd point to two things initially, and then we can discuss further if that's helpful. But initially, I'd point out that what makes free enterprise fund different, what this court recognized in Bank of Louisiana, there are several paragraphs Not on this issue, it did not. Bank of Louisiana did not touch on separation of powers in this context in any kind of meaningful way. Now, I'm going to go back and look at the briefing and see what was raised. But the opinion certainly did not address this in any detail at all. I wasn't addressing separation of powers, Your Honor. What I was addressing is why these kind of claims can be channeled through Section 78. Why? Bank of Louisiana doesn't talk about this kind of claim being channeled through before you can get to district court. What Bank of Louisiana does say, and I agree it's not on this claim, but I'm just talking about claims generally, is that, and it analogizes to the SEC cases from all of the other circuits on this, is that, excuse me, my voice is getting a little low, is that I know what it holds. You don't have to sit here and tell me what it holds. I read it. I think it's different. They're challenging, did they constitutionally do this? Did they deprive me of these constitutional rights, which is fundamentally different from saying the ALJ at the SEC is not constitutionally there. And so what I would point you to then on my second one was the Supreme Court's decision in Elgin, which postdates Free Enterprise Fund, because there I thought Elgin was before it. No. Free Enterprise Fund, I believe, is from 2010, and Elgin is from 2012. Okay. It's a later decision. And so that's, and that's why the Supreme Court used that opportunity in Elgin to clarify what it meant about bringing the agency's expertise to bear and whether or not it's fully collateral, but also in the discussion in Elgin. But Elgin didn't involve this kind of case, did it? No, I agree. It's not a separation of powers concern, but what it did say is that they said the dissent wants to carve out an exception for facial constitutional challenges. This isn't that either. Well, I understand. This is a whole different animal. And I'm just, I'm, you can keep arguing, but you're cabining it when we're talking about these kinds of issues, totally insulated from the President's removal authority. That's a different animal to me. If it's a different animal, then what you can think about is that the agency doesn't even need to address the merits of that, because the agency could still provide relief on it, right? The agency doesn't, the commission here doesn't have to delegate the case down to the ALJ. But it did. It did, but it can still grant meaningful relief even before you get to court, because if the agency just said . . . Why, if that's what the case, why did, in Lucia, the U.S. Supreme Court say, send it back to a properly constituted ALJ? Because his case at that time had been heard before an ALJ that had not been appointed by the commission, and the commission agreed with that ALJ's initial decision, and then it went out into the courts of appeals . . . And the court had jurisdiction to decide that issue. The court of appeals did, yes. And so, as did the district court. Lucia did not sue the district court. And here, they may lose on the merits of the argument. At least the district court seems to me, has jurisdiction to entertain the claim. I disagree, Your Honor. I know you do. And if I can point out why on this is because if you're thinking about it on the three Thunder Basin factors, first, you clearly have meaningful judicial review in the court of appeals. That's what this court . . . Well, they would have in free enterprise fund as well. But in free enterprise fund, critically, there was not an ongoing enforcement proceeding, right? There was nothing that would lend the plaintiffs in that case to get into the courts of appeals. Isn't this worse? No, Your Honor, that's . . . Isn't the process in an unconstitutionally appointed ALJ worse than going through an investigation process with an unconstitutionally appointed investigation? Again, the question of whether the district court has jurisdiction doesn't go to the relative merits of the claim. But what the court went through in free enterprise said, look, you could get a bad result here. And we're not going to wait for that. They acknowledged the possibility that it could turn into a bad result. They said, we're not going to put you through that. You don't have to go through that process to challenge whether the ALJ, or in that case, the board, was properly constituted under the Constitution. But what the court was saying is, we are not going to make you voluntarily incur a sanction just to gin up an enforcement proceeding to seek judicial review. What this court said in Bank of Louisiana is, that's not at stake here. There is already an enforcement proceeding. To the extent you think betting the farm is relative here, the farm is already on the land in Louisiana. In a different context. In a different context, in a different statute. But critically, the analysis still applies here with full force. I just disagree, frankly. There is . . . I don't think Bank of Louisiana says that. But if you think that . . . I'm going to go look at the briefs, but I don't read it saying that. If you think that separation of powers challenges are meaningfully different, the appointments clause challenge is still a challenge under the separation of powers. Who has authority to appoint this person? And under the Thunder Basin analysis, there's nothing that makes a removal challenge separate or distinct from any other kind of facial constitutional challenge that could be raised. It's still susceptible to all of the three factors. Is it capable of meaningful judicial review? Is it wholly collateral to the proceedings, which it's not because the only reason they can raise it . . . Well, they agreed upon it, and they said it was. But there again, there was no enforcement proceeding, and . . . That had nothing to do with wholly collateral. It does, Your Honor, and if I can just emphasize that point. There, their claim was the fact that the Board exists and can regulate us is the reason why we want to challenge its constitutionality. And so therefore, our claim about its constitutionality is wholly collateral to anything else that the Board is currently doing, because we are not being subjected to anything. Whereas here, their claim against the ALJ is premised on the fact that they are currently in an enforcement proceeding, an enforcement proceeding for which Congress has allowed judicial review solely in the courts of appeals and not in the district courts. That's why the wholly collateral factor tilts in our favor. But even if you didn't think that, and some of the other courts have said, maybe it's a wash, we don't get to that, the fact that meaningful judicial review is available in the courts of appeals, and that the agency can bring its expertise under ELGIN, which postdates free enterprise fund, to explain that we might moot out the constitutional issues by ruling on your favor on other things, goes to show that there is no district court jurisdiction. And that analysis on the last factor also demonstrates why this case is not ripe for judicial review until there is a final order against the plaintiff. And I just want to clarify my earlier, I was not suggesting that I thought this was a case about the jurisdiction of the ALJ. I know it's about the district court. I was responding to your contention that trying a case, if you will, in front of somebody who is unconstitutionally appointed is okay. You're saying that's not a jurisdictional question, and I understand your argument on that, but I was just trying to explain that I was just responding to your argument. I wasn't suggesting the issue before us is that. It's about the jurisdiction of the district court. I get that. I know that. I didn't want to create a confusion on that. We would ask the court to affirm. Thank you. Are you able to textually walk us through the difference between the statute in Bank of Louisiana and the statute here? I hope so. Okay. So tell us that, because if we're bound by Bank of Louisiana, that changes things considerably. So tell us why we're not. Yes. The Bank of Louisiana applied a FDIC statute that had a flat jurisdiction stripping bar. It said there's a provision in the statute, 1818, that says no court shall have the power to enjoin essentially anything that the FDIC would do in the situation of the bank examination. Here we have an entirely different statute. The SEC statute actually says in 78AA that courts have exclusive jurisdiction under the 34 Act, and we cite that material in our brief. Further, the review that goes to the circuit court under the 78Y provision only applies to final orders, and it's permissive, not mandatory. It says you may appeal the matter to the circuit court, whereas in the 1818 statute, it was required. It was exclusive jurisdiction. The word exclusive does not appear anywhere in 78Y or any part of the 34 Act. Finally, the 34 Act has a provision commonly known as a savings clause that says nothing in this statute about the administrative scheme deprives courts of jurisdiction conferred upon them by other statutes. Jurisdiction is there's a presumption in favor of jurisdiction. I would argue the case law particularly recognizes that in the realm of constitutional questions and in the realm of structural constitutional questions such as that presented here. So the Bank of Louisiana case is simply quite different. It's inapposite and irrelevant. I would also note that the panel in Bank of Louisiana itself said that going through the Thunder Basin analysis was not necessary. How to read 78Y has already been decided by the United States Supreme Court for all circuits, and we here today are asking this court not to join the insurrection. Would we be creating a circuit split, though, if we rolled your way? Absolutely. Okay. The ripeness argument is a red herring. You said the Bank of Louisiana court did talk about the statute, but then it did go through the Elgin factor. Yeah, they said what they were going to do is cycle through the— They said the same result is true under the three Elgin factors. Well, actually, it's five elements, and that's why it took some time to go through that earlier in my argument, because they omit the examination of the statute at all. They simply jumped to the three factors. Who's they? The Bank of Louisiana or Elgin? The Bank of Louisiana panel. You will search that opinion in vain for any discussion of 78Y or any part of the securities law statute, so they don't even examine that statutory— Well, they were deciding a different statute. Precisely, but the point is that it has no bearing upon 78Y. But because they did—I mean, alternative holdings are still precedent, and you acknowledge they did go through the Elgin factors as well. Yes, and— They didn't just rely on the statute. Yeah, and the critical point I hope to convey today is the Supreme Court already cycled through those same factors and reached a different and controlling conclusion. Ripeness is— The Bank of Louisiana is contrary to the Supreme Court? Well, no, because it's interpreting another statute, but in terms of 78Y— Okay, I see. I understand what you're saying. Definitely. 78, okay. Yes. Now, ripeness is a problem for the SEC in two respects. First, they argue here that the claim's not ripe yet, but they also parallelly argue that once it's started, it's too late, putting the SEC in a heads-we-win-tails-you-lose situation. Ripeness is also inapposite under both the total gas and energy transfers case. In both of those cases, the companies were raising objections to possible future actions that might be taken. Page 35 through—335 through 339 of total gas says, all of their arguments were predicated on the supposition that FERC might ultimately schedule an AP administrative proceeding before an ALJ but had not yet done so. So the entire factual situation presented in total gas is just not present for Michelle Cochran. And on the betting the farm, I would ask how many times does Michelle Cochran have to put the farm on the table? Federalist 78 says that it requires uncommon fortitude for judges to do their duty as faithful guardians of the Constitution. We ask that today that this court do its duty. Anything less is abdication. And so we ask you to find jurisdiction. Thank you. You're on. That will conclude the arguments for today. Court is adjourned until tomorrow morning.